# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

EMILY KATHRYN MICHAEL,

        Plaintiff,

v.                                     Case No. 3:19-cv-809-JRK

ANDREW M. SAUL,
Commissioner of Social Security,

        Defendant.

_____

## OPINION AND ORDER[1]

### I. Status

Emily Kathryn Michael ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying a request for wavier of recoupment of an overpayment of supplemental security income ("SSI") and assessment of the overpayment against Plaintiff in the amount of $12,054.68. Plaintiff initially filed for SSI on July 23, 2009.[2] See Transcript of Administrative Proceedings (Doc. Nos. 17, 18) (collectively "Tr." or

---

[1]    The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 16), filed December 27, 2019; Reference Order (Doc. No. 20), entered January 6, 2020.

[2]    Although actually completed on July 23, 2009, see Tr. at 27, the filing date is listed elsewhere in the administrative transcript as July 7, 2009, see, e.g., Tr. at 35.

"administrative transcript"),[3] filed December 27, 2019, at 27-33. Plaintiff was 21 years old at the time she filed for SSI. See, e.g., Tr. at 27 (providing birth date). In the July 2009 application, Plaintiff indicated under the "Income" section that she had a $15,000 Guild Scholarship Award ("Guild Scholarship") from July 2009 to "[c]ontinuing." Tr. at 29. Plaintiff was found to be blind by the SSA and entitled to SSI beginning on July 7, 2009. See Tr. at 35; see also Tr. at 35-40.

On November 3, 2011, Plaintiff provided "redetermination information" to support her continued eligibility for SSI benefits. Tr. at 58-59, 60-68 (redetermination summary).[4] The SSA then spoke with Plaintiff on November 21, 2011, and a Report of Contact was made. See Tr. at 69-70. The Report summarized the conversation and noted that Plaintiff stated that she received a $15,000 scholarship through the GuildScholar program in 2006 and that she put it into a certificate of deposit ("CD"). Tr. at 70. The Report also noted that "[s]ince [Plaintiff] received the money in 2006 and it was intended for her academic year of 2006-07 and she still has the money, [the SSA was] count[ing]

---

[3]       Since the page numbers of the second-filed administrative transcript (Doc. No. 18) pick up after the last page in the first-filed administrative transcript (Doc. No. 17), the undersigned cites both administrative transcripts filed as "Tr." and refers to them collectively as one administrative transcript. For ease of reference, citations to the administrative transcript follow the pagination of the transcript itself.

[4]       On September 3, 2011, the SSA sent Plaintiff a letter indicating her SSI payments were being changed. See Tr. at 153-56. However, the payments remained the same. See, e.g., Tr. at 35.

it as a resource[5] and the interest rec[eived] on the CD as income." Tr. at 70. The SSA thereafter requested from Bank of America information regarding Plaintiff's bank accounts. See Tr. at 71-74.

On November 28, 2011, Plaintiff was notified that her SSI payments were being stopped beginning January 2012 because Plaintiff "ha[d] resources worth more than $2,000 for October 2009 on." Tr. at 75; see also Tr. at 75-87. On December 20, 2011, Plaintiff was advised that she was overpaid $12,054.68 from October 2009 through December 2011 because Plaintiff's "resources were more than a person could own and still get SSI." Tr. at 88; see also Tr. at 88-92, 93-94 (detailed explanation of overpayment), 95 (payment stub), 96.

The SSA received a letter on January 3, 2012 from GuildScholar indicating that Plaintiff "had the discretion to use the [Guild S]cholarship for one year or to spread the monies over the time of her undergraduate and graduate education." Tr. at 158; see Tr. at 26. According to the letter, the Guild

---

[5] Under 20 C.F.R. § 416.1201, "resources means cash or other liquid assets . . . that an individual . . . owns and could convert to cash to be used for his or her support and maintenance." 20 C.F.R. § 416.1201(a). "Liquid resources are cash or other property which can be converted to cash within 20 days . . . Examples of resources that are ordinarily liquid are . . . financial institution accounts (including savings, checking, and time deposits, also known as certificates of deposit) and similar items." Id. § 416.1201(b). "Liquid resources, other than cash, are evaluated according to the individual's equity in the resources." Id. (reference omitted).

Scholarship was awarded in 2006 "for meeting unmet financial needs related to tuition and educational costs." Tr. at 158.[6]

On March 15, 2012, Plaintiff filed a "Request for Waiver of Overpayment Recovery or Change in Repayment Rate," in which Plaintiff requested that the SSA waive collection of the overpayment. Tr. at 99-106. On the waiver form, Plaintiff checked the box indicating that "[t]he overpayment was not [Plaintiff's] fault and [Plaintiff] cannot afford to pay the money back and/or it is unfair for some other reasons." Tr. at 99. When asked to explain why she should not be liable for the overpayment, Plaintiff stated that "[t]he SSA was notified of [Plaintiff's Guild S]cholarship money when [Plaintiff] applied for SSI benefits (see [Plaintiff's] application)." Tr. at 100. Plaintiff further noted that "[a]t that time[, Plaintiff] was informed that [Plaintiff] was entitled to SSI benefits despite having the [Guild S]cholarship." Tr. at 100.

The SSA denied Plaintiff's request for an overpayment waiver on April 26, 2012, but advised Plaintiff that she had a right to a "personal conference" to discuss the matter. Tr. at 109-11. Plaintiff and her attorney attended Plaintiff's personal conference on May 14, 2012. Tr. at 112 (Report of Contact). The SSA on May 22, 2012 again denied Plaintiff's request for waiver, see Tr. at 159-162,

---

[6]     The original award letter that Plaintiff received from GuildScholar was dated October 22, 2005. See Tr. at 26. This letter indicates that Plaintiff was awarded "a onetime award of $15,000 for the academic year 2006-2007." Tr. at 26. The letter informed Plaintiff that a check for $15,000 would be mailed in June 2006. See Tr. at 26.

and explained that although Plaintiff was not at fault for the overpayment, repayment did not "[d]efeat the [p]urpose of Title XVI of the Act," Tr. at 159.

On July 19, 2012, Plaintiff's counsel requested reconsideration of the denial of the overpayment waiver and submitted a brief in support of the request. Tr. at 114, <u>see</u> Tr. at 113 (brief). The brief specifically indicated that Plaintiff was not appealing the SSA's decision that it found Plaintiff "not at fault for causing the overpayment." Tr. at 113. The brief also stated Plaintiff was appealing only the finding that "recovery of the overpayment would not defeat the purpose of the Act." Tr. at 113. In addition, Plaintiff argued that "recovery of this overpayment would clearly be against equity and good conscience . . . ." Tr. at 113.

The SSA sent Plaintiff a notice on July 25, 2012 indicating that "[the SSA's] first decision [regarding the overpayment] was correct." Tr. at 115-18, 120-21; <u>see also</u> Tr. at 119 (Report of Contact indicating original finding was correct). The notice explained Plaintiff's right to a hearing before an Administrative Law Judge ("ALJ"). Tr. at 115-18, 120-21. On August 1, 2012,

Plaintiff filed a request for a hearing before an ALJ and included a supplemental brief authored by her counsel. Tr. at 123; see Tr. at 122 (brief).[7]

On December 3, 2012, an ALJ held a hearing, during which he heard testimony from Plaintiff, who was represented by counsel. Tr at 195-213. Plaintiff testified that she was awarded a $15,000 Guild Scholarship and that upon receipt of the scholarship check, she put the money into a CD. Tr. at 201; see Tr. at 26 (award letter). She further testified that she planned to save the money for her doctoral tuition and that it was set aside for this purpose. Tr. at 202-03. Plaintiff testified that she did not use the Guild Scholarship money for tuition because she "was receiving [a] Bright Futures Scholarship, and that covered [her] tuition costs at the time." Tr. at 203. In 2009, according to Plaintiff, she and her mother went to a SSA office to apply for SSI. Tr. at 202. Plaintiff testified she told the SSA at that time about her Guild Scholarship and the fact that it was in a CD. Tr. at 202. Plaintiff stated that she sent "the [award] letter back with the application." Tr. at 202. She testified that the SSA did not inform her of any certain time period during which she had to use the

---

[7]    Counsel in the brief again stated that Plaintiff was not appealing the SSA's finding that she was not at fault for the overpayment, but that she disagreed with the SSA's finding that recovery would not defeat the purpose of the Act. Tr. at 122. In addition, Plaintiff argued that recovery of the overpayment would be against equity and good conscience. Tr. at 122.

scholarship money or that the scholarship money would affect her receipt of SSI benefits. Tr. at 202-03.

On January 23, 2013, the ALJ issued a decision ("2013 decision") determining Plaintiff was overpaid benefits in the amount of $12,054.68 during the period of October 1, 2009 to December 1, 2011; that Plaintiff was at fault in causing the overpayment; that recovery of the overpayment was not waived; and that Plaintiff was liable for repayment of overpaid benefits. Tr. at 17-23. Plaintiff then requested review by the Appeals Council, Tr. at 13, and submitted additional evidence in the form of a brief authored by her attorney in support of her request, see Tr. at 192-94.

On September 19, 2014, the Appeals Council denied Plaintiff's request for review, Tr. at 6-9, making the ALJ's 2013 decision the final decision of the Commissioner. Specifically, the Appeals Council stated:

> The [ALJ] found that [Plaintiff was] not without fault in connection with the overpayment because at the time [Plaintiff] applied for SSI in July 2009[, Plaintiff] did not provide sufficient information concerning approximately $16,000 in scholarship funds that [Plaintiff was] holding in a [CD] account. In statements made on July 23, 2009 and November 17, 2009, [Plaintiff] reported that [she was] receiving monthly income from a scholarship, but not that [she] had retained scholarship funds. In a notice dated November 10, 2009, the [SSA] advised [Plaintiff] that [she] needed to submit bank statements concerning any bank account that held more than $1,500. [Plaintiff] did not provide records from the Bank of America that would have shown the CD worth $16,069.89 as of December 1, 2009. Therefore, [Plaintiff was] not without fault in causing or accepting the overpayment and recovery of the overpayment cannot be waived.

Tr. at 7 (citations omitted).

Plaintiff appealed the 2013 decision to this Court on November 3, 2014. <u>See</u> Tr. at 221-26; Complaint (Doc. No. 1), Case No. 3:14-cv-1357-JBT. On July 13, 2015, this Court entered a Memorandum Order ("2015 Memorandum Order") reversing and remanding the Commissioner's 2013 decision for further administrative proceedings based on the ALJ's failure to make explicit credibility findings as to Plaintiff's testimony. Tr. at 221-26. On July 14, 2015, Judgment was entered reversing and remanding the case to the Commissioner. Tr. at 227.

On August 14, 2015, Plaintiff's attorney submitted a letter to the ALJ with additional evidence to be included in Plaintiff's file for consideration upon remand. Tr. at 228-33 (affidavits of Plaintiff and her mother). The Appeals Council remanded the proceedings to the ALJ on August 15, 2015 pursuant to the 2015 Memorandum Order. Tr. at 238; <u>see also</u> Tr. at 234-35.

On May 4, 2016, the same ALJ held another hearing, during which he heard testimony from Plaintiff, who was represented by counsel. Tr. at 264-77. Plaintiff again testified that immediately after she received the $15,000 Guild Scholarship, she put the money into a CD where the money has remained since. Tr. at 270-71. Plaintiff stated that she disclosed the CD when she applied for SSI and that she provided financial information requested by the SSA. Tr. at 271-72. She testified she reviewed her SSI application and attached the award

letter to her application. Tr. at 272. Plaintiff stated that the SSA did not tell her she could not have more than a certain amount of resources and only mentioned that she could not have more than $2,000 in a checking account. Tr. at 273. She also said that the SSA's position that it first received the scholarship award letter in November 2011 was "incorrect." Tr. at 274.

On May 26, 2016, the ALJ issued a Decision finding Plaintiff was overpaid benefits in the amount of $12,054.68 during the period of October 1, 2009 to December 1, 2011; that Plaintiff was at fault in causing the overpayment; that recovery of the overpayment was not waived; and that Plaintiff was liable for repayment of overpaid benefits. Tr. at 282-91. Plaintiff requested review by the Appeals Council and submitted a brief authored by her attorney. Tr. at 261 (brief), 262. On May 7, 2019, however, the Appeals Council "found no reason under [the SSA's] rules to assume jurisdiction." Tr. at 215-17. Specifically, the Appeals Council wrote:

> [Plaintiff] argue[s] that there is no evidence that [Plaintiff] failed to provide the [SSA] with the information to determine her eligibility for SSI payments.
>
> [Plaintiff] did not provide evidence regarding the $15,000 she had in a [CD] until November 2011, more than two years after she applied for SSI payments. [Plaintiff] alleges in her statements and testimony that she timely provided the information but the [ALJ] found her statements and testimony were inconsistent with the evidence of record.
>
> Accordingly, we do not find that [Plaintiff's] written exceptions provide a basis for changing the [ALJ]'s [D]ecision dated

> May 26, 2016. In addition, we find that the [ALJ]'s [D]ecision complies with the orders of the U.S. District Court and Appeals Council. Furthermore, the [D]ecision is consistent with our applicable laws, regulations, and Social Security Rulings.

Tr. at 215. The ALJ's Decision therefore became the final decision of the Commissioner. On July 8, 2019, Plaintiff commenced this action under 42 U.S.C. § 405(g), as incorporated by § 1383(c), by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff argues that she was not at fault in causing the overpayment and that recovery of the overpayment would be against equity and good conscience. Plaintiff's Memorandum – Social Security (Doc. No. 26; "Pl.'s Mem."), filed April 14, 2020, at 7-15. On July 13, 2020, Defendant responded by filing a Memorandum in Support of the Commissioner's Decision (Doc. No. 29; "Def.'s Mem.") addressing Plaintiff's contentions.

Upon review of the parties' arguments and the administrative transcript, the undersigned finds that the Commissioner's final decision is due to be affirmed.

## II.   Standard of Review

This Court reviews the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001)

(citing <u>Falge v. Apfel</u>, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" <u>Dyer v. Barnhart</u>, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Falge</u>, 150 F.3d at 1322 (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." <u>Cornelius v. Sullivan</u>, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. <u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### III.  Discussion

Generally, the Social Security Act ("the Act") requires that when an individual has been overpaid SSI benefits, the SSA must recoup the overpaid benefits. 42 U.S.C. § 1383(b)(1)(A); <u>see also</u> 20 C.F.R. §§ 416.535(a), 416.560. A waiver of recoupment of an overpayment can be granted when (1) the individual was without fault in connection with the overpayment; and (2) adjustment or recovery would defeat the purposes of Title XVI of the Act, be

against equity and good conscience, or impede efficient or effective administration of Title XVI because of the small amount involved. 42 U.S.C. § 1383(b)(1)(B)(i); 20 C.F.R. § 416.550;[8] see also 20 C.F.R. §§ 416.553, 416.554, 416.555.

Here, the ALJ first found that Plaintiff "was overpaid benefits in the amount of $12,054.68 during the period October 1, 2009 to December 1, 2011." Tr. at 284 (emphasis and citation omitted). The ALJ then found that Plaintiff "was at fault in causing the overpayment." Tr. at 286 (emphasis and citations omitted). Although the ALJ found Plaintiff at fault in causing the overpayment, he made alternative findings. See Tr. at 287-90. He found that "recovery of the overpayment does not defeat the purpose of Title XVI of the Act," Tr. at 288 (citation omitted), "recovery would not be against equity and good conscience," Tr. at 289 (citation omitted), and "recovery of the overpayment does not impede efficient or effective administration under Title XVI of the Act," Tr. at 289 (citation omitted). Finally, the ALJ found that "[r]ecovery of the overpayment is not waived and [Plaintiff] is liable for repayment of $12,054.68 during the period [of] October 1, 2009 to December 1, 2011." Tr. at 290 (emphasis and citations omitted).

---

[8]     Citations to 20 C.F.R. § 416.550 are to the version in effect prior to August 27, 2020 when this section was revised to add provisions due to COVID-19.

As noted, Plaintiff argues she established that she was not at fault and that recoupment of the overpayment would be against equity and good conscience. With respect to whether she was at fault, Plaintiff asserts that the SSA "found on two occasions that Plaintiff was not at fault in causing the overpayment" and that "she explicitly did not appeal that part of [the SSA's] decision in her request for a hearing before an ALJ." Pl.'s Mem. at 9. Plaintiff appears to argue that the issue of whether she was at fault for the overpayment was thus not properly before the ALJ (and is not properly before this Court). The undersigned need not decide this issue (or whether Plaintiff was at fault) because, as explained below, substantial evidence supports the ALJ's alternative finding that "[e]ven if [Plaintiff] were not at fault, recovery of the overpayment would not be against equity and good conscience." Tr. at 289 (citation omitted).

When determining whether recovery of the overpayment would be against equity and good conscience, the SSA considers whether an individual changed his or her position for the worse or relinquished a valuable right because of reliance upon a notice that payment would be made or because of the incorrect payment itself. See 20 C.F.R. § 416.554. Section SI 02260.015 of the Program Operations Manual System ("POMS") provides, in part, that in SSI cases, the SSA will find that recoupment is against equity and good conscience if it determines the claimant "failed to report a change because of

misinformation from an official source," such as an SSA employee. SI 02260.015(B)(6)(a).

Here, in asserting that recoupment of the overpayment would not be against equity and good conscience, Plaintiff does not argue that she changed her position for the worse or that she relinquished a valuable right. Instead, Plaintiff argues that even though the Court in the 2015 Memorandum Order "explicitly found" section GN 02250.061 of the POMS (dealing with misinformation) [9] "to be operative authority," "the ALJ failed to discuss, implicitly or explicitly the requirements" of this POMS provision. Pl.'s Mem. at 13-14. Plaintiff argues that this failure is "contrary to the law-of-the-case doctrine." Id. at 14.

Responding, Defendant asserts that the ALJ did consider whether recovery of the overpayment would be against equity and good conscience based on misinformation. See Def.'s Mem. at 17. Defendant argues that the law-of-the-case doctrine does not apply on the ground that the Court "surmised that if

---

[9]     Like section SI 02260.015 of the POMS, the section that Plaintiff cites (GN 02250.061) provides that the SSA will find recovery against equity and good conscience if the individual relied on misinformation from an official SSA source. This POMS provision, however, applies to Title II and Title XVIII overpayments, not to Title XVI overpayments like the one at issue here. The applicable section, quoted above, is SI 02260.015. In any event, because both sections are the same in substance, Plaintiff's reliance on the wrong section is immaterial.

        Plaintiff also argues the Court in 2015 found another section of the POMS (GN 02250.150) to be operative authority. See Pl.'s Mem. at 14. The 2015 Memorandum Order, however, does not refer to this section. See Tr. at 221-26.

the ALJ accepted Plaintiff's testimony, the ALJ 'likely' would have found that recovery . . . would be against equity and good conscience, but [the Court] made no finding or holding about the issue or facts that was binding on the ALJ." Id. at 19.

For the reasons set out below, there is substantial evidence supporting the ALJ's finding that recovery of the overpayment would not be against equity and good conscience.

The ALJ found that "[t]here is no evidence [Plaintiff] gave up a valuable right by relying on the overpayment waiver." Tr. at 289. The ALJ explained that Plaintiff "continued to pay for tuition with her Bright Futures [S]cholarship," that "she received assistance from the Division of Blind Services, which was also not reported on her application," and that "[s]he attended school and worked as a teaching assistant and subsequently as an adjunct professor." Tr. at 289; see Tr. at 203 (Plaintiff testifying she used the Bright Futures Scholarship to pay for tuition); Tr. at 204 (Plaintiff testifying she received assistance from the Division of Blind Services); Tr. at 206-07 (Plaintiff testifying that she was a teaching assistant from January 2012 through May 2012 and that she became an adjunct professor in August 2012). The ALJ also found that "[t]here is no indication [Plaintiff] changed her position for the worse by relying on any overpayment waiver." Tr. at 289. Plaintiff does not make any argument that she "changed her position for the worse or relinquished a valuable right

- 15 -

because of reliance upon a notice that payment would be made, or because of the incorrect payment itself," 20 C.F.R. § 416.554, but the undersigned nonetheless finds that substantial evidence supports the ALJ's finding that recovery of the overpayment is not against equity and good conscience under the provisions of 20 C.F.R. § 416.554.

Turning to section SI 02260.015 of the POMS (regarding misinformation), the Court in 2015 remanded the case for further proceedings because even though the ALJ explicitly found that recovery of the overpayment was not against equity and good conscience, the ALJ did not make credibility findings as to Plaintiff's testimony, which "was critical to the outcome." Tr. at 225; see Tr. at 22 (ALJ's 2013 decision). The Court stated that "had Plaintiff been believed," her reliance on misinformation would have deemed recovery of the overpayment against equity and good conscience. Tr. at 225 (emphasis added). In sum, the 2015 Memorandum Order stated that the ALJ needed to make a "critical" credibility finding, and that the credibility finding would then determine whether misinformation deemed recovery of the overpayment against equity and good conscience. See Tr. at 225.

On remand, the ALJ did make explicit credibility findings in accordance with the 2015 Memorandum Order and found that Plaintiff's statements were not consistent with the evidence. Tr. at 287, 289; see Tr. at 226; Owens v. Heckler, 748 F.2d 1511, 1514 (11th Cir. 1984) (finding that an ALJ has wide

latitude as finder of fact to evaluate the credibility of a claimant's testimony but must explicitly state the grounds for rejecting it); see also Viehman v. Schweiker, 679 F.2d 223, 227–29 (11th Cir. 1982) (stating that "[c]redibility determinations lie solely within the province of the trier of fact . . . because of the unique position occupied by the fact finder and his ability to view first-hand the demeanor of the witness" (citation omitted)). Specifically, the ALJ stated as follows:

> Although [Plaintiff] and her mother allege that they were told at the initial interview that the scholarship would have no impact on her receipt of SSI benefits and that a copy of the scholarship letter was provided to [the] SSA soon after [Plaintiff]'s initial application interview, the claim file does not substantiate these allegations. There is no date-stamped copy of the scholarship letter showing that it was received by [the] SSA in 2009 nor is there other Agency evidence that this letter was received by the [SSA] prior to 2011. The [ALJ] finds that, if this letter had been received by the [SSA] in 2009 as alleged, the [SSA] would have immediately determined that [Plaintiff] was not eligible for SSI based on excess resources as they clearly did when the letter was actually received in 2011. Therefore, the [ALJ] does not believe that the scholarship letter was sent in to [the] SSA shortly after [Plaintiff] went to the SSA office for her initial interview in July 2009 as there is nothing in the file to document and/or substantiate that this letter was received until after she was notified in 2011 that she had been overpaid. In order for the undersigned to accept [Plaintiff]'s statement of what happened in this case, it would be necessary for the [ALJ] to also conclude that all of the SSI claims representatives working at the SSA field office were so incompetent that they could not understand that the $15,000 that she received in a scholarship in 2005 had long since lost its character as such a scholarship when it was not spent in the 2006-2007 school year[,] and that the very clear rules concerning such scholarship awards would not have been immediately recognized and applied so as to deny the SSI application on the basis of excess resources. The [ALJ] does not find

> [Plaintiff]'s statements to be consistent with the other evidence of record. In this case, the record substantiates that, as soon as the [SSA] received the information from the financial institution regarding [Plaintiff]'s CD, [Plaintiff]'s benefits were stopped and she was assessed with an overpayment due to excess resources for the period from October 2009 through December 2011.

Tr. at 287 (citations omitted).

The ALJ articulated his reasoning for finding Plaintiff's testimony not consistent with the evidence and cited to the administrative record in support of his reasoning. See Tr. at 287. The ALJ considered Plaintiff's hearing testimony and the affidavits of Plaintiff and Plaintiff's mother and found that the "self-serving statements of [Plaintiff] and her mother that an SSA employee informed her that she was entitled to SSI benefits despite the [Guild S]cholarship, are insufficient to establish misinformation . . . ." Tr. at 289 (citations omitted).[10]

Based on the foregoing, substantial evidence supports the ALJ's finding that recovery of the overpayment is not against equity and good conscience.

### IV. Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence. Accordingly, it is

---

[10]     To the extent Plaintiff argues that the ALJ did not take any "new additional evidence regarding Plaintiff's description of her interactions with the [SSA] employees," the ALJ specifically considered the new affidavits that Plaintiff submitted after her case was remanded for further proceedings. See Tr. at 289 (citing Exhibit ZZ – the affidavits of Plaintiff and Plaintiff's mother).

**ORDERED**:

1.    The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), **AFFIRMING** the Commissioner's final decision.

2.    The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on March 31, 2021.

_James R. Klindt_
JAMES R. KLINDT
United States Magistrate Judge

keb
Copies to:
Counsel of Record